UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------X
FEDERAL INSURANCE COMPANY                     :
and EAGLE QUEST INTERNATIONAL LTD.            :
                                              :
            Plaintiff,                        :
                                              :        09 cv 1409 (GBD)
      -against-                               :
                                              :        ECF CASE
M/V CMA CGM MARLIN, her engines, boilers,     :
Tackle, etc., TIANRONG LOGISTICS, LTD.        :
AMERASIA 3 SNC and CMA SHIPS UK LTD.          :
                                              :
            Defendants.                       :
------------------------------------------------------------X
                                              :
TIAN RONG LOGISTICS, LTD.                     :
                                              :
      Defendant/Third Party Plaintiff,        :
                                              :
      -against-                               :
                                              :
CMA CGM S.A. and CMA CGM (AMERICA)            :
LLC.                                          :
                                              :
            Third Party Defendants.           :
------------------------------------------------------------X

## MEMORANDUM OF LAW
## IN SUPPORT OF MOTION TO DISMISS

LENNON, MUPRHY & LENNON, LLC
The GrayBar Building
420 Lexington Avenue, Suite 300
New York, New York 10170
(212) 490-6050
(212) 490-6070

*Attorneys for Defendants*
AMERASIA 3 SNC and CMA SHIPS UK LTD.

Patrick F. Lennon, Esq.
Charles E. Murphy, Esq.
Anne C. LeVasseur, Esq.

## TABLE OF CONTENTS

PRELIMINARY STATEMENT ..................................................................................1

SUMMARY OF FACTS .........................................................................................2

ARGUMENT ....................................................................................................3

POINT I
MOTION TO DISMISS LEGAL STANDARD .............................................................3

POINT II
THE FORUM SELECTION CLAUSE CONTAINED IN THE BILL OF LADING
CONTRACT IS MANDATORY AND MUST BE ENFORCED ......................................4

POINT III
PLAINTIFFS ARE BOUND BY THE FORUM SELECTION
CLAUSE CONTAINED IN THE CMA CGM BILL OF LADING.................................10

POINT IV
THE FORUM SELECTION CLAUSE IN THE CMA CGM BILL OF
LADING REQUIRES PLAINTIFFS TO SUE DEFENDANTS IN FRANCE ...............13

CONCLUSION.................................................................................................17

## PRELIMINARY STATEMENT

Defendants, AMERASIA 3 SNC and CMA SHIPS UK LTD. (hereinafter referred to collectively as "Defendants"), submit this Memorandum of Law in support of their motion filed pursuant to Federal Rules of Civil Procedure ("Fed. R. Civ. P.") Rule 12(b)(3) and 12(b)(6) and pursuant to 28 U.S.C. § 1406 seeking to dismiss the Complaint of the Plaintiffs, FEDERAL INSURANCE COMPANY and EAGLE QUEST INTERNATIONAL, LTD. (hereinafter referred to as "Plaintiffs"). The Court should dismiss the Complaint in its entirety on the basis of a mandatory and exclusive forum selection clause contained in the Bill of Lading[1] contract numbered QDJJ003733 (hereinafter referred to as "CMA CGM Bill of Lading") issued for the carriage of goods consigned to co-defendant/ third-party plaintiff Tian Rong Logistics, Inc. (hereinafter referred to as "Tian Rong"), who acted as a Non-Vessel Operating Common Carrier ("NVOCC")[2]. *A copy of the CMA-CGM Bill of Lading contract is annexed to the Declaration of Charles E. Murphy as Exhibit 1.* Additionally, the Complaint should be dismissed because it fails to state a claim upon which relief can be granted under Fed. R. Civ. P 12(b)(6).

The forum selection clause in the controlling CMA CGM Bill of Lading requires all disputes arising to be determined by the courts of Marseille, France. The face of the Bill of Lading contract contains the following clause:

---

[1] A bill of lading is a contract of carriage for the common carriage of goods by sea.

[2] A Non-Vessel Operating Common Carrier is a company, often a forwarding agent, who does not own or operate the carrying ship but who contracts with a shipping line for the carriage of the goods of third parties to whom it normally issues a house bill of lading. NVOCCs operate as middlemen; they arrange for relatively small shipments to be picked up from shippers, consolidate the smaller parcels, and ship them via a carrier or several carriers. They do not, however, own or charter the ships that actually carry the cargo." *Rexroth Hydraudyne B.V. v. Ocean World Lines, Inc.,* 547 F.3d 351, 357 (2d Cir. 2008) *quoting  Ins. Co. of N. Am. v. S/S Am. Argosy,* 732 F.2d 299, 301 (2d Cir. 1984). Stated differently, it is a cargo consolidator in ocean trades who will buy space from a carrier and sub sell it to smaller shippers. The NVOCC issues bills of lading, publishes tariffs and otherwise conducts itself as an ocean common carrier, except that it will not provide the actual ocean or intermodal service.

1

> All claims and disputes arising hereunder or in connection with the bill of
> lading shall be determined by the COURTS of MARSEILLE at the
> exclusion of the courts of any other country.

*See Exhibit 1 to Murphy Decl.*   As Marseille, France is the proper forum selected by the parties

in accordance with the mandatory and exclusive jurisdiction clause, Plaintiffs' Complaint filed

in this Court should be dismissed.  It is the CMA CGM Bill of Lading that controls the rights

and obligations vis-à-vis Plaintiffs and Defendants.

## SUMMARY OF FACTS

Plaintiffs have alleged *inter alia* that defendant AMERASIA 3 SNC is the owner of the

M/V CMA CGM MARLIN (hereinafter referred to as the "Vessel").  *Complaint* at ¶ 3.  Plaintiffs

have also alleged that CMA SHIPS UK LTD. is the Vessel's manager.  *Id.*  Plaintiffs have

further alleged that Defendants lost and damaged a cargo of counterweights during ocean

carriage on board the Vessel between the load port of Qingdao, China and the discharge port of

Los Angeles, California.  *Id.* at ¶ 4.

In addition to suing Defendants, Plaintiffs have also sued Tian Rong, the NVOCC for the

subject shipment.  Plaintiffs have alleged that the cargo loss and damage was caused by the fault,

neglect, deviation, unseaworthiness, etc., of Defendants and co-defendant/third-party plaintiff

Tian Rong.  *Id.*  Plaintiffs have claimed $30,000 due to cargo damage and non-delivery.  *Id.* at ¶

8.

Pursuant to Schedule A of the Complaint, Plaintiffs have alleged that the cargo was

carried on board the Vessel pursuant to a bill of lading number TRLIQDBER0801009 dated

January 25, 2008.  *Id.* at ¶ 4.  The bill of lading that Plaintiffs referenced is not the CMA CGM

Bill of Lading issued by the ocean carrier, but rather is the house bill of lading, presumably

issued by the NVOCC co-defendant Tian Rong.

It is the CMA CGM Bill of Lading numbered QDJJ003733 dated January 25, 2008 that governs the rights and obligations between Plaintiffs and Defendants.  The controlling forum selection clause of the CMA CGM Bill of Lading provides that all disputes must be determined by the courts of Marseille, France.  *See Murphy Declaration Exhibit 1*.  The face of the Bill of Lading contract contains the following clause: "All claims and disputes arising hereunder or in connection with the bill of lading shall be determined by the COURTS of MARSEILLE at the exclusion of the courts of any other country." *Id.*

Co-defendant NVOCC Tian Rong has filed a third-party complaint, invoked Rule 14 (c) of the Federal Rules of Civil Procedure, and has impleaded CMA-CGM S.A. and CMA-CGM (America)(hereinafter referred to collectively as "Third-Party Defendants"). *See Third Party Complaint* at ¶ 6.  In its third-party complaint, Tian Rong has alleged that it acted as the NVOCC in respect of the subject carriage. *Id.* at ¶ 3.  Tian Rong further alleged that Third-Party Defendants were common carriers of merchandise by water and contracted with Tian Rong to physically transport the shipment pursuant to the CMA CGM Bill of Lading. *Id.* at ¶ 8.  In its third-party complaint Tian Rong claimed against Third-Party Defendants for contribution and indemnity. *Id.* at ¶ 12.

## ARGUMENT

### POINT I

### MOTION TO DISMISS LEGAL STANDARD

"The Supreme Court reconsidered the standard for motions to dismiss in *Bell Atlantic Corp. v. Twombly*, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007), in the wake of which courts are to apply 'a flexible plausibility standard', which obliges a pleader to amplify a claim with some factual allegations in those contexts where such amplification is needed to render the claim

plausible." *VR Global Partners, L.P. v. Bennett*, 2008 Dist. LEXIS 66065 at *12 (S.D.N.Y.

August 28, 2008) *citing Iqbal v. Hasty*, 490 F.3d 143, 157-58 (2d Cir. 2007). "Under this

standard, a complaint may be dismissed where it fails to plead enough facts to state a claim to

relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 127 S. Ct. at 1974. "In order

to state a claim, the factual allegations must be enough to raise a right to relief above the

speculative level." *Id.* at 1965. Where a plaintiff "ha[s] not nudged [its] claims across the line

from conceivable to plausible, its complaint must be dismissed." *Id.* at 1974.

   "When deciding a 12(b)(6) motion, the Court must take as true the facts as alleged in the

complaint and draw all reasonable inferences in the plaintiff's favor." *ATSI Commc'ns, Inc. v.

Shaar Fund, Ltd.,* 493 F.3d 87, 98 (2d Cir. 2007). "Dismissal for failure to state a claim is

proper where it appears beyond doubt that the plaintiff can prove no set of facts in support of his

claim which would entitle him to relief." *Smith v. Local 819 I.B.T. Pension Plan,* 291 F.3d 236,

240 (2d Cir. 2002). Additionally, "[a] complaint cannot be amended by the briefs in opposition

to a motion to dismiss." *Zim Integrated Shipping Services v. Belco Res. Inc.*, 2008 U.S. DIST.

LEXIS 36524 at * 13 (S.D.N.Y. May 2, 2008).

## POINT II

### THE FORUM SELECTION CLAUSE CONTAINED IN THE BILL
### OF LADING CONTRACT IS MANDATORY AND MUST BE ENFORCED

   "The Supreme Court has repeatedly upheld the validity of forum selection clauses

between contracting parties." *American Home Assurance Company a/s/o Stanley Door Systems

v. M/V Hanjin Marseilles*, 2004 U.S. Dist. LEXIS 9705 (S.D.N.Y. June 1, 2004) *citing e.g.,

Carnival Cruise Lines, Inc. v. Shute*, 499 U.S. 585, 589-95, 111 S. Ct. 1522, 1525-28, 113 L. Ed.

2d  622 (1991); *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 473 n. 14, 105 S. Ct. 2174, 2182

n. 14, 85 l. Ed. 2d 528 (1985); *M/S Bremen v. Zapata Off-Shore Co.,* 407 U.S. 1, 8-18, 92 S. Ct.

1097, 1912-17, 32 L. Ed. 2d 513 (1972). "[C]ourts of this circuit have made it clear that courts

do possess the ability under either Rule 12(b)(3) or §1406(a) to dismiss a case upon a motion that

a forum selection clause renders venue in a particular court improper." *Zurich Ins. Co. v. Prime,*

*Inc.*, 419 F. Supp. 2d 384, 386 (S.D.N.Y. August 9, 2005).

> The Carriage of Goods by Sea Act (COGSA), 46 U.S.C. §§ 1300-15, applies to
> bills of lading for shipments to or from a U.S. port in foreign trade. Like other
> contracts, mandatory forum selection clauses in maritime contracts governed by
> COGSA are upheld between the parties by federal courts. In *Vimar Seguros Y
> Reaseguros, S.A. v. M/V Sky Reefer*, 515 U.S. 528, 115 S. Ct. 2322, 132 L. Ed.
> 2d 462 (1995), the Supreme Court held that foreign arbitration clauses in bills of
> lading were not invalid under COGSA. Since *Sky Reefer*, courts have
> consistently held that forum selection clauses (including foreign arbitration
> clauses) in bills of lading are valid under COGSA. *See, e.g., Kukje Hwajae Ins.
> Co. v. M/V Hyundai Liberty*, 294 F.3d 1171, 1175 (9th Cir. 2002), *pet. for cert.
> filed*, 538 U.S. 975, No. 02-813, 71 USLW 3400 (Nov. 22, 2002); *Fireman's
> Fund Ins. Co. v. M.V. DSR Atlantic*, 131 F.3d 1336, 1339 (9th Cir. 1997), *cert.
> denied*, 525 U.S. 921, 119 S. Ct. 275, 142 L. Ed. 2d 227 (1998); *Mitsui & Co.
> (U.S.A.), Inc. v. Mira M/V*, 111 F.3d 33, 36 (5th Cir. 1997); *Glyphics Media, Inc.
> v. M.V. Conti Sing.*, 2003 U.S. Dist. LEXIS 4387, 02 Civ. 4398, 2003 WL
> 1484145 at *4-6 (S.D.N.Y. Mar. 21, 2003); *Far Eastern Antique Arts v. M/V Cho
> Yang Success*, 2002 U.S. Dist. LEXIS 10698, 01 Civ. 8375, 2002 WL 1313308
> at *2 (S.D.N.Y. June 14, 2002); *Central National-Gottesman, Inc. v. M.V.
> Gertrude Oldendorff*, 204 F. Supp. 2d 675, 679 (S.D.N.Y. 2002); *Commercial
> Union Ins. Co. v. M.V. Bremen Express*, 16 F. Supp. 2d 403, 407 (S.D.N.Y.
> 1998), *aff'd*, No. 99-9070, 208 F.3d 202 (table) (2d Cir. Mar. 21, 2000); *Farrell
> Lines, Inc. v. Columbus Cello-Poly Corp.*, 32 F. Supp. 2d 118, 125-28 (S.D.N.Y.
> 1997), *aff'd*, 161 F.3d 115 (2d Cir. 1998); *International Marine Underwriters
> CU v. M/V Kasif Kalkavan*, 989 F. Supp. 498, 499-500 (S.D.N.Y. 1998).

*American Home Assurance Co. a/s/o Stanley Door Systems v. M/V Hanjjin Marseilles,* 2004 U.S.

Dist. LEXIS 9705 at *5.

     Recently, the Second Circuit has articulated a four-part test to determine whether to

dismiss a claim based on a forum selection clause. *See Phillips v. Audio Active Ltd.,* 495 F.3d

378, 383-84 (2d Cir. 2007). First, a forum selection clause must be "reasonably communicated

to the party resisting enforcement." *Id.* Second, a court must decide whether the forum selection

clause is classified as "mandatory or permissive, *i.e.*, to decide whether the parties are required to

bring any dispute to the designated forum or simply permitted to do so." *Id.* Third, the court must determine whether the claims and parties involved in the suit are subject to the forum selection clause. *Id.* If the court determines that the forum clause was communicated the resisting party, has mandatory force and covers the claims and parties involved in the dispute, it is presumptively enforceable. *Id.* The fourth step of the analysis requires the court to determine "whether the resisting party has rebutted the presumption of enforceability by making a sufficiently strong showing that enforcement would be unreasonable or unjust, or that the clause was invalid for such reasons as fraud or overreaching." *Id.* 384-385.

In this case, the first prong of the four-part test is met. The forum selection clause is clearly printed on the face of the Bill of Lading and thus was reasonably communicated. *See Nippon Express U.S.A. (Illinois) Inc. v. M/V Chang Jiang Bridge,* 2007 U.S. Dist. LEXIS 92032 at *9-10 (S.D.N.Y. December 13, 2007) (holding forum selection clause was reasonably communicated to challenging party when printed on the Bill of Lading.)

As to the second prong, the forum selection clause contains the following language: "all claims and disputes arising under or in connection with this bill of lading shall be determined by the COURTS of MARSEILLE at the exclusion of the courts of any other country." (emphasis added). *See Exhibit 1 to Declaration of Charles E. Murphy.* "Forum selection clauses that contain the term 'shall' generally are held to be mandatory clauses that must be enforced." *American Home Assurance Co. a/s/o Stanley Door Systems v. M/V Hanjin Marseilles,* 2004 U.S. Dist. LEXIS at * 11 (S.D.N.Y. June 1, 2004). The Bill of Lading provides for the jurisdiction of the courts of Marseille and expressly excludes any other courts. *See John Boutari & Son, Wines & Spirits, S.A. v. Attiki Importers & Distribs., Inc.,* 22 F. 3d 51, 52-53 (2d Cir. 1994)(forum selection clause is mandatory when venue and jurisdiction is specified with exclusive or

6

mandatory language.)  The parties clearly evidenced their intent to make the courts of Marseille

the exclusive jurisdiction, thereby making the forum selection clause mandatory rather than

permissive, *i.e.*, the parties are required to bring any dispute to the designated forum.

The third prong is whether the claims and the parties are subject to the forum selection

clause.  The third prong of the test is satisfied.  Third Party Defendants issued the Bill of Lading

contract for the shipment of counterweights as described in Plaintiffs' Complaint and lists Tian

Rong as the consignee of the shipped goods.  *See Exhibit 1 to Declaration of Charles E.*

*Murphy.*  Additionally, "A party which sues on the bill of lading accepts its terms." *See Mitsui*

*& Co. v. MIRA M/V,* 111 F.3d 33, 36 (5th Cir. 1997)(holding district court did not err in

determining that, by filing a lawsuit for damages under the bill of lading, plaintiff had accepted

the terms of the bill of lading, including the forum selection clause.)  The forum selection clause

contained in the Bill of Lading applies to "all claims and disputes arising under or in connection

with this bill of lading."

Accordingly, the CMA CGM Bill of Lading contract is presumptively valid and can only

be overcome upon a factual showing that "enforcement would be unreasonable or unjust, or that

the clause [is] invalid for such reasons as fraud or overreaching". *Philips v. Audio Active Ltd* ,

494 F. 3d at 383-384 *citing M/S/ Berman v. Zapata Off-Shore Co.*, 407 U.S. at 15.  "A forum

selection clause may be found unreasonable or unjust if its enforcement will for all practical

purposes deprive the complaining party of its day in court due to the grave inconvenience or

unfairness of the selected forum." *Roby v. Corp. of Lloyd's*, 996 F.2d 1353, 1363 (2d Cir. 1982).

In *M/S Bremen v. Zapata Off-Shore Co.,* 407 U.S. 1, 8-18,  the Supreme Court established a

federal standard relating to enforcement of forum clauses applicable in admiralty and

international transactions.

> Under *M/S Berman*, dismissal of [Plaintiff's] claim is proper unless [it] makes a prima facie showing that the clause should be set aside. . . We have explained that a forum clause is enforceable unless (1) its incorporation was the result of fraud or overreaching; (2) the law to be applied in the selected forum is fundamentally unfair; (3) enforcement contravenes a strong public policy of the forum state; or (4) trial in the selected forum will be so difficult and inconvenient that the plaintiff effectively will be deprived of his day in court.

*Phillips v. Audio Active Ltd*, 494 F.3d at 392 *citing Roby v. Corp. of Lloyd's*, 996 F.2d at 1358-61.

Here, there is no suggestion that incorporation of the forum selection clause in the CMA CGM Bill of Lading was the result of fraud or overreaching.

Additionally, there is no reason to consider the court of Marseille to be a fundamentally unfair forum since forum selection clauses calling for resolution of disputes by the courts of Marseille have been enforced by New York courts. *See Ana Distribution, Inc. v. CMA CGM (America) Inc.*, 329 F. Supp. 2d 565, 567 (S.D.N.Y. 2004)(holding it is not unfair for plaintiff's claims to be heard in French courts because the French system provides procedures for reasonable discovery). Nor will enforcement of the forum selection clause contravene any strong public policy.

> [T]he Court of appeals for the Second Circuit has developed a policy of honoring forum selection clauses. *See Strategic Mktg. & Communications, Inc. v. Kmart Corp.*, 41 F. Supp. 2d 268, 270 (S.D.N.Y. 1988). Underlying this policy is an understanding that forum selection clauses carry an economic benefit to at least one of the parties that is typically reflected in the overall economics of the contract. As such, these clauses are bargained-for terms of the contract that deserve to be honored by courts.

*Zurich Insurance Co. v. 105078 Ontario, Inc.* 419 F. Supp. 2d 384, 2005 U.S. Dist. LEXIS 16384 (S.D.N.Y. August 9, 2005); *see also La Fondiaria Assicurazione S.P.A. v. Ocean World*, 2002 U.S. Dist. LEXIS 23913 at *5 (S.D.N.Y. December 12, 2002)("forum selection clauses are favored for the certainty they bring to overseas shipping transactions.")

Trial in France will not be so difficult and inconvenient that Plaintiffs will effectively be deprived of their day in court.  Litigation in France is not impractical or unfair.

Additionally, the jurisdictional clause contained in the CMA CGM Bill of Lading contract has previously been enforced by several courts in this District.  In *La Fondiara Assicurazione, S.P.A. v. Ocean World Lines, Inc.*, 2002 U.S. Dist. LEXIS 23913 (S.D.N.Y. December 12, 2002) the court granted third party defendant's CMA CGM's motion to dismiss third party plaintiff's complaint seeking contribution and indemnification against CMA CGM based on the forum selection clause contained in the bill of lading.  The forum selection clause contained in the subject Bill of Lading in this case is identical to the forum selection clause in bill of lading contract at issue *La Fondiara Assicurazione*.  In *La Fondiara Assicurazione,* the court held that the forum selection clause was mandatory and enforceable and granted the motion to dismiss.  *Id.* at \*4.

In *Ana Distribution, Inc. v. CMA CGM (America) Inc.*, 329 F. Supp. 2d 565 (S.D.N.Y. August 13, 2004), the plaintiff sued CMA CGM to recover damages for alleged damage to cargo carried by CMA CGM.   The forum selection clause contained in the relevant bills of lading contained the following clause:

> All claims and disputes arising under or in connection with this bill of lading shall
> be determined by the courts of MARSEILLES at the exclusion of the courts of
> any other country.

*Id.* at \*3.  CMA CGM moved to dismiss the plaintiff's complaint on the basis of the mandatory forum selection clause.  The court held that the forum selection clause was clearly communicated to plaintiff as it was clearly visible and legible on the bills of lading.  *Id.* The court further held that where the consignee brought an action against the vendor's carrier, the consignee is bound by all the terms of the contract on which it sues.  *Id. at \*4.*  Finally, the court held that the forum

selection clause was not fundamentally unfair because the French courts provide procedures for reasonable discovery and that "there are several perfectly adequate discovery methods available under French law." *Id. at 6 \*citing Ernst v. Ernst*, 722 F. Supp. 61, 67 (S.D.N.Y. 1989). Hence, the court granted CMA CGM's motion to dismiss the complaint.

Finally, in *San Jin World Trading, Inc. v. CMA CGM (America) Inc.*, 2004 U.S. Dist. LEXIS 22447 (S.D.N.Y. November 3, 2004), a case virtually identical to *Ana Distribution*, the court adopted the carefully considered decision rendered in *Ana Distribution* and found the forum selection clause contained in CMA CGM's bill of lading requiring that any suit be filed in Marseilles, France to be mandatory and enforceable. The *San Jin* court held "the forum selection clause is not fundamentally unfair and will not deprive plaintiff of its day in court." *Id. at 2*.

Because the forum selection clause was reasonably communicated, and is mandatory rather than permissive, and because the claims and the parties are subject to the forum selection clause, and finally, because Plaintiffs are unable to rebut the presumption of enforceability, the forum selection clause contained in the CMA CGM Bill of Lading contract must be enforced and the Complaint dismissed.

## POINT III

## PLAINTIFFS ARE BOUND BY THE FORUM SELECTION CLAUSE CONTAINED IN THE CMA CGM BILL OF LADING

Plaintiffs are bound by the terms of the CMA CGM Bill of Lading, including the forum selection clause. The CMA CGM Bill of Lading listed NVOCC co-defendant Tian Rong as consignee. Dismissal is appropriate because the NVOCC, *i.e.*, Tian Rong, acted as Plaintiffs' agent in entering into the CMA CGM Bill of Lading. Consequently, Plaintiffs are bound by the terms of the CMA CGM Bill of Lading, including the forum selection clause that requires all claims to be brought in Marseille, France.

10

The recent holding of *A.P. Moller-Maersk A/S v. Ocean Express Miami*, 550 F. Supp. 2d

454 (S.D.N.Y. 2008), is instructive.  In *A.P. Moller-Maersk A/S v. Ocean Express Miami*, the

court analyzed U.S. Supreme Court precedent, including *Norfolk S. Ry. v. James N. Kirby, Pty.*

*Ltd.* 543 U.S. 14 (2004), and held that a shipper was bound to the ocean carrier's bill of lading

notwithstanding that the shipper had booked the carriage with an NVOCC.   There, the shipper

maintained that its claims brought against the ocean carrier in two foreign courts were not

subject to the forum selection clause in the ocean carrier's bill of lading because it was not a

party to that contract.  The court disagreed.  In *A.P. Moller-Maersk A/S v. Ocean Express Miami*,

Judge Sweet held that the ocean carrier's forum selection clause was enforceable against the

cargo owner and reasoned as follows:

> The Kirby Court articulated three bases for its decision, all of which recommend
> application of its "limited agency rule" to a forum selection clause. First, the
> Court held that its limited agency rule is consistent with industry practice. *Kirby*
> at 35. In intercontinental ocean shipping, carriers may not know if they are
> dealing with an intermediary rather than a cargo owner, how many intermediaries
> there are, or what obligations are outstanding between them. *Id.* The task of
> information gathering might be very costly or impossible given the number of
> times goods change hands in the course of intermodal transport. *Id.,* citing 1 T.
> Schoenbaum, Admiralty and Maritime Law 589 (3d ed. 2001); Stephen G. Wood,
> Multimodal Transportation: An American Perspective on Carrier Liability and
> Bill of Lading Issues, 46 Am. J. Comp. L. 403, 404 (1998).
>
> Second, the Court stated that if liability limitations negotiated with cargo owners
> were reliable while limitations negotiated with intermediaries were not, carriers
> would likely want to charge the latter higher rates, but are prevented from doing
> so by statutory and decisional law promoting nondiscrimination in common
> carriage. *Kirby,* at 35.
>
> Finally, the Court argued that its decision produced an equitable result. The cargo
> owner retained the right to sue the intermediary for any loss exceeding the
> limitation of liability it agreed to with the carrier. *Id.*

*A.P. Moller-Maersk A/S v. Ocean Express Miami*, 550 F. Supp. 2d at 465.  Judge Sweet

proceeded to apply the three bases of *Kirby's* limited agency rule in the context of a forum

selection clause in the ocean carrier's bill of lading. The court reasoned that the limited agency rule is consistent with industry practice. It also reasoned that liability limitations are enforceable regardless of whether they are negotiated with cargo owners or through a middlemen such as an NVOCC. Judge Sweet further held as follows:

> The first two rationales apply with equal force to a forum selection clause. The "normal commercial role" of an NVOCC or freight forwarder is agent of the cargo owner when it accepts a bill of lading. *See Delphi-Delco Electronics Systems v. M/V NEDLLOYD EUROPA*, 324 F. Supp. 2d 403, 419-20 (S.D.N.Y. 2004). The "very costly or even impossible" task of tracking down information about the cargo owner, intermediaries, and the obligations between them does not vary between clauses in the bill of lading. Further, failure to recognize a default rule that a freight forwarder's acceptance of a bill of lading binds the cargo owner to a forum selection clause in the bill of lading would effectively render carriers unable to contract for selection of a forum, an undesirable result in itself, which also implicates the carrier's inability to charge higher rates when contracting with an intermediary.
>
> * * *
>
> The rule recognizing a freight forwarder's limited agency to bind a cargo owner to a forum selection clause by accepting a carrier's bill of lading also has the advantage of being consistent with decades of decisional and statutory law. *See, e.g., Great N. R. Co. v. O'Connor*, 232 U.S. 508, 514, 34 S. Ct. 380, 58 L. Ed. 703 (1914) ("the carrier had the right to assume that the transfer company could agree upon the terms of the shipment"); *Ins. Co. of N. Am. v. M/V OCEAN LYNX*, 901 F.2d 934, 937 n.2 (11th Cir. 1990) (a cargo owner "may treat [an NVOCC] as a common carrier for purposes of COGSA, but underlying carriers . . . treat [the NVOCC] as [the cargo owner's] agent"); *Carman Tool & Abrasives, Inc. v. Evergreen Lines*, 871 F.2d 897, 901 (9th Cir. 1989) ("Parties who do not deal with the carrier directly have a responsibility to obtain a copy of the bill of lading if they have an interest in knowing its terms. We decline to place on the carrier the burden of tracking down these remote parties and advising them of the terms of the bill of lading."); *Ins. Co. of N. Am. v. S/S Am. Argosy*, 732 F.2d 299, 301 (2d Cir. 1984) ("With respect to the vessel and her owner . . . the NVOCC is an agent for the shipper, and thus merely a customer . . . .") (citation omitted); *Jockey Int'l, Inc. v. M/V LEVERKUSEN EXPRESS*, 217 F. Supp. 2d 447, 457 (S.D.N.Y. 2002) (holding that forum selection clause in a bill of lading issued to an NVOCC binds the Cargo owner because the NVOCC acted as the cargo owner's agent in

accepting the bill of lading); *Glyphics Media, Inc. v. M.V. CONTI SINGAPORE*, 2003 U.S. Dist. LEXIS 4387, 2003 WL 1484145, at *7 (S.D.N.Y. 2003) (same); *Wildwood Imps. v. M/V ZIM SHANGHAI*, 2005 U.S. Dist. LEXIS 2736, 2005 WL 425490, at *2 (S.D.N.Y. Feb. 20, 2005) (same); *Am. Home Assur. Co. ex rel. Stanley Door Sys. v. M/V HANJIN,* 2004 U.S. Dist. LEXIS 9705, 2004 WL 1197240, at *5 (S.D.N.Y. June 1, 2004) (same); see also 46 U.S.C.A. § 40102 (defining a non-vessel-operating common carrier as "a shipper in its relationship with an ocean common carrier" and an ocean freight forwarder as a person that "dispatches shipments from the United States via a common carrier and books or otherwise arranges space for those shipments on behalf of shippers").

*A.P. Moller-Maersk A/S v. Ocean Express Miami*, 550 F. Supp. 2d at 465-466.

Based on the above decisions, Plaintiffs are bound to the forum selection clause in the CMA CGM Bill of Lading. As the agreed-for forum is Marseille, France, this action should be dismissed.

**POINT IV**

**THE FORUM SELECTION CLAUSE IN THE CMA CGM BILL OF
LADING REQUIRES PLAINTIFFS TO SUE DEFENDANTS IN FRANCE**

An ocean carrier's bill of lading, such as the CMA CGM Bill of Lading in this case, extends the benefit of its provisions to the agents and subcontractors who participate in the carriage. The extension of a bill of lading's liability limitations is accomplished through a so-called "Himalaya Clause". *Rexroth Hydraudyne B.V. v. Ocean World Lines, Inc.,* 547 F.3d 351, 355 (2d Cir. 2008). The CMA CGM Bill of Lading provided that the shipper accepted all of its terms and conditions, including the forum selection clause. *See CMA CGM Bill of Lading Terms attached to Murphy Declaration as Exhibit 2.*

In this case, the Himalaya Clause contained in CMA CGM's Bill of Lading is contained in Clause 27. More specifically, Clause 27(2) of CMA CGM's standard Bill of Lading provides as follows:

The Merchant undertakes that no claim or allegation shall be made against any Person whomsoever by whom the Carriage is performed or undertaken (including all Sub-Contractors of the Carrier), other than the Carrier, which imposes or attempts to impose upon any such Person, or any vessel owned by any such Person, any liability whatsoever in connection with the Goods or the Carriage of the Goods, whether or not arising out of negligence on the part of such Person and, if any such claim or allegation should nevertheless be made, to indemnify the Carrier against all consequences thereof. *Without prejudice to the foregoing every such Person shall have the benefit of every right, defence, limitation and liberty of whatsoever nature herein contained or otherwise available to the Carrier as if such provisions were expressly for his benefit; and in entering into this contract, the Carrier, to the extent of these provisions, does so not only on his own behalf but also as agent and trustee of such Persons.* (emphasis added).

Clause 30 is also relevant and states that "All actions against Carrier under the contract of Carriage evidenced by this Bill of Lading shall be brought before the "Tribunal de Commerce de MARSEILLE" and no other Court shall have jurisdiction with regards to any such action...."

As explained *supra*, the NVOCC, Tian Rong, served as Plaintiffs' agent and thus bound Plaintiffs to the terms of the CMA CGM Bill of Lading. The CMA CGM Bill of Lading's Himalaya Clause, reprinted above, extended all of the bill of lading's terms, including the forum selection clause, to Defendants, who are the Vessel's owner and Vessel's manager and who, therefore, assisted in the carriage of Plaintiffs' cargo. As explained more fully below, the U.S. Supreme Court enforced a substantially similar Himalaya Clause in an ocean carrier's bill of lading that extended the bill of lading provisions to other parties who participated in the carriage. *See Kirby,* 543 U.S. at 20.

Moreover, in *Mazda Motors of Am., Inc. v. M/V Cougar Ace*, 565 F.3d 573 (9th Cir. 2009), the Ninth Circuit Court of Appeals very recently affirmed the District Court's holding that the vessel interests are among the parties logically covered by the bill of lading's Himalaya Clause. As such, the vessel was entitled to enforce the forum selection clause contained in the ocean carrier's bill of lading. In *M/V Cougar Ace*, the Court of Appeals held that because the

14

vessel assisted in performing the carriage that was defined in the bills of lading, it was a

Himalaya beneficiary that could invoke the forum selection clause.  Like in this case, in the *M/V*

*Cougar Ace* the vessel was owned by an entity other than the ocean carrier who issued the bills

of lading.  The vessel asserted that it could invoke the forum selection clause in the bills of

lading and, as such, that plaintiff's chosen venue was improper.  Under the Himalaya clause, the

contractual provisions that benefited the carrier also benefited certain other parties, including the

vessel interests.  The Court of Appeals so held because the vessel's services were obviously

necessary for completion of the carriage and it ratified the bills of lading by transporting the

cargo.  The Court of Appeals based its decision upon the U.S. Supreme Court's *Kirby* decision

and held that the vessel interest was a sub-contractor within the meaning of the Himalaya Clause

because "it plainly assisted the performance of the Carriage; as the carrying vessel, it was

indispensable to that performance. Mazda [cargo interest] does not dispute that the forum

selection clause is a 'provision[] . . . benefitting the Carrier,' so we see no reason why the forum

selection clause should not also benefit the defendant vessel here." *M/V Cougar Ace*, 565 F.3d at

578.  The Court of Appeals further applied a rationale that is equally relevant in the case at bar.

The *M/V Cougar Ace* court held as follows:

> Our cases interpreting Himalaya clauses support this reading.  To decide whether
> an entity benefits from a Himalaya clause, "the proper test is to consider 'the
> nature of the services performed compared to the carrier's responsibility under the
> carriage contract.'" *Akiyama Corp. of Am. v. M.V. Hanjin Marseilles*, 162 F.3d
> 571, 574 (9th Cir. 1998) (*quoting Taisho Marine & Fire Ins. Co. v. Vessel
> Gladiolus*, 762 F.2d 1364, 1367 (9th Cir. 1985)). The Himalaya clause in that case
> also applied to every "servant, agent and sub-contractor," and the clause's
> language extending defenses to other parties was identical to the clause here. *See
> id.* at 573. We held that a terminal operator and a stevedore fell under the
> Himalaya clause because "subcontractor" included terminal operators and
> stevedores by definition and because the services those parties provided were the
> same as the services the carrier promised to perform. *See id.* at 574. The
> corresponding defined term here is "Sub-Contractor," which is defined broadly
> enough to include the defendant vessel. Further, the ocean carriage the vessel

provided was precisely the same as Mitsui's chief responsibility under the bills of lading. Therefore, the COUGAR ACE, not unlike a stevedore, is "directly related to the carrier's responsibilities under the carriage contract" and can benefit from the Himalaya clause. *Mori Seiki USA, Inc. v. M.V. Alligator Triumph*, 990 F.2d 444, 450 (9th Cir. 1993).

The Supreme Court's holding in *Kirby* also supports our interpretation of the bills of lading. The Himalaya clause in *Kirby* also extended contractual protections to any entity "whose services contribute to performing the contract." Kirby, 543 U.S. at 31. The Court held this expansive language must include a land carrier because the contract called for transportation to an inland destination in Alabama, 366 miles from the port. "Thus, the parties must have anticipated that a land carrier's services would be necessary for the contract's performance." *Id.* at 32. Here, the defendant vessel's services were even more obviously necessary for completion of the carriage; the parties must have anticipated that the vessel's services would be necessary for performing a contract for ocean carriage.

*M/V Cougar Ace*, 565 F.3d at 579.

Consistent with the decisions in *Kirby* and *M/V Cougar Ace*, in this case Defendants, who Plaintiffs have alleged are the Vessel's owner and manager involved in the carriage, are entitled to the benefit of the CMA CGM forum selection clause. Similar to in *Kirby* and *M/V Cougar Ace*, here Plaintiffs must have anticipated that the Vessel owner's and the Vessel manager's services would be necessary for the contract's performance. Stated differently, the subject carriage from China to the United States simply could not have been performed without the necessary services provided by Defendants. In this way, Defendants are directly related to the ocean carrier's responsibilities under the CMA CGM Bill of Lading. As such, the Himalaya Clause applies to Defendants in the same way it would apply to a stevedore. *See also Watkins v. M/V London Senator*, 2000 AMC 2740 (E.D.Va. 2000)(holding that a Himalaya clause gave stevedoring company the right to enforce a forum selection clause that required suit in Korea).

## CONCLUSION

In light of the intention of the parties to submit disputes under the CMA CGM Bill of Lading contract to the courts of Marseille, France, as evidenced by the forum selection clause in that contract, this Court should grant Defendants' motion to dismiss.

Dated:  September 4, 2009

Respectfully submitted,
Defendants,
AMERASIA 3 SNC and CMA SHIPS UK LTD.,

By: _____
Charles E. Murphy (CM 2125)
Patrick F. Lennon (PL2162)
Anne C. LeVasseur (AL3333)
LENNON MURPHY & LENNON, LLC
The GrayBar Building
420 Lexington Ave., Suite 300
New York, NY 10170
(212) 490-6050 (phone)
(212) 490-6070 (fax)
pfl@lenmur.com
acl@lenmur.com

## AFFIRMATION OF SERVICE

I hereby certify that on September 4, 2009 a copy of the foregoing MEMORANDUM OF LAW IN SUPPORT OF MOTION TO DISMISS was served on the below-named counsel by mail and email. Pursuant to the attached Court notice, the Court's ECF System is offline for "downtime" between September 3 and September 8, 2009. In accordance with the attached notice dated August 31, 2009, this document shall be filed electronically as soon as the ECF system is back in service.


By: _____
Charles E. Murphy

cc:
*Via U.S. Mail and E-Mail: hmk@kingsleyandkingsley.com*
Harold M. Kingsley, Esq.
KINGSLEY, KINGSLEY & CALKINS
91 West Cherry St.
Hicksville, NY 11801

*Via U.S. Mail and E-Mail: jdevivo@cckvt.com*
Jessica DeVivo, Esq.
CICHANOWICZ, CALLAN, KEANE, VENGROW & TEXTOR, LLP
61 Broadway, Suite 3000
New York, New York, 10006

**Charles E. Murphy**

**From:**   Mary E. Fedorchak
**Sent:**   Tuesday, September 01, 2009 2:03 PM
**To:**     Mail
**Subject:** Pacer downtime Sept.3-7

# System Downtime Scheduled
# for Thursday September 3, 2009

Please adjust your routine for use of the ECF system; system downtime is scheduled for Thursday.

The system will be down **from 2.00 pm on Thursday September 3 until 8:00 am on Tuesday September 8**

**Of course, PACER access to SDNY will also be unavailable during this same time period.**
We apologize for any inconvenience.

9/1/2009

J. MICHAEL McMAHON

CLERK OF COURT

# UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF NEW YORK
500 PEARL STREET, NEW YORK, NY 10007
300 QUARROPAS STREET, WHITE PLAINS, NY 10601

WWW.NYSD.USCOURTS.GOV

(212) 805-0800

### Notice of SDNY ECF Service Interruption

### From: Thursday, September 3, 2009, at 2:00 PM

### To: Tuesday, September 8, 2009, at 8:00 AM

Please be advised the Southern District Court's Electronic Case Filing (ECF) computer system will be out of service for routine maintenance during the time period described above.

**You will be unable to view or file documents on the ECF system or PACER during this time.**

The Court is fully aware of the inability of outside parties to electronically file documents during an ECF Service Interruption.

In accordance with the Court's ECF RULES & INSTRUCTIONS, section 11, if you are unable to electronically file due a technical difficulty, including an ECF Service Interruption, follow the steps below:

**(a)** Do not attempt to file paper documents in electronic cases except for emergency filings (eg. Temporary Restraining Order). The Clerk will be unable to accept routine paper filings in ECF cases;

**(b)** Electronically file your document as soon as the ECF system is back in service;

**(c)** If you miss a filing deadline because of a technical difficulty, make the record complete by attaching a statement explaining why the filing was "late". Where appropriate you may include a copy of this message as a pdf attachment to the filed document.

What can you do when the ECF system is unavailable? You can start a new civil action by filing paper documents at the courthouse during regular office hours, and you can email stipulations and proposed orders to the Clerk for the Court's consideration.

Questions concerning Electronic Case Filing (ECF) may be directed to the ECF HELP DESK at (212)805-0800, Monday through Friday, from 8:30 AM to 7:00 PM..

Please share this email with others in your organization. We apologize for any inconvenience this may cause.

Robert Rogers
POC Coordinator
USDC/SDNY
8/31/09